T.C. Memo. 2007-54

UNITED STATES TAX COURT

ESTATE OF DAPHNE BAYNHAM WHITE, DECEASED,
KEMBLE WHITE, INDEPENDENT EXECUTOR, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 518-05.                    Filed March 7, 2007.

<u>Kemble White</u>, for petitioner.

<u>Valerie L. Makarewicz</u>, for respondent.

MEMORANDUM OPINION

WHALEN, <u>Judge</u>:  This case is before the Court to
decide a motion filed on behalf of the Estate of Daphne
Baynham White (hereinafter the estate), entitled
"Petitioner's Motion for Costs and Attorney's Fees", in
which the estate seeks "litigation costs" in the amount of

$3,935. The estate's motion is governed by section 7430 of the Internal Revenue Code (hereinafter all section references are to such Code, unless stated otherwise) and by Rules 230-233 of the Tax Court Rules of Practice and Procedure (hereinafter all Rule references are to such Rules). The estate's motion was filed at the same time the parties filed a stipulation of settled issues in which they dispose of all of the other issues in the case. See Rule 231(c). The stipulation of settled issues is further discussed below. Neither party requested an evidentiary hearing, and we decide the estate's motion without one. See Rule 232(a)(2).

## Background

The petition in this case asks the Court to redetermine the income tax deficiency and additions to tax determined by the Commissioner in the 2001 income tax of Ms. Daphne Baynham White. Ms. White died on November 30, 1999. At that time, she was a resident of Ojai, California. She is referred to herein as Ms. White. The executor of her estate also resided in Ojai, California, at the time the instant petition was filed.

Respondent determined the subject tax deficiency after receiving reports from various payors of payments made to

Ms. White.  The following is a list of the payors and the income they reported paying to Ms. White during 2001:

| Payor | Type of Income | Amount |
|-------|----------------|--------|
| Thorn Partnership | Interest | $153 |
| Thorn Partnership | Real estate | 67 |
| Thorn Building | Interest | 2 |
| Thorn Building | Real estate | 587 |
| Branch Banking | Dividends | 1,439 |
| The Phoenix Group LLC | Rental | 31,773 |
| | | 34,021 |

Based upon these reports, respondent determined a tax deficiency in Ms. White's 2001 income tax of $3,985, an addition to tax for failure to file under section 6651(a)(1) of $896.62, an addition to tax for failure to pay under section 6651(a)(2) of $597.75, and an addition to tax for failure to pay estimated income tax under section 6654(a) of $157.68.

After the estate's petition for redetermination was filed in this Court, respondent filed a motion to extend the time within which to answer the petition on the ground that additional time was needed to locate respondent's administrative files.  The Court granted respondent's motion over the estate's objection.

Soon thereafter, respondent filed a second motion to extend the time within which to answer (hereinafter referred to as second motion).  The estate did not object to the second motion because respondent advised the Court

in that motion that the parties had agreed that there is no deficiency due from Ms. White for taxable year 2001, and that respondent conceded the additions to tax determined in the notice of deficiency. Respondent's second motion also stated that the parties had entered into a stipulation of settled issues that would resolve all issues raised in the notice of deficiency. Respondent's second motion stated that the stipulation of settled issues would be filed, pursuant to Rule 231(c), at the time the estate's motion for litigation costs was filed. Respondent's second motion was filed approximately 92 days after the petition was filed. Respondent never filed an answer in this case.

Shortly thereafter, the Court received the stipulation of settled issues mentioned in respondent's second motion. In that document, the parties agreed that Ms. White was not required to file an income tax return for taxable year 2001. They also agreed that the income reported by the payors, who are listed above, had been reported on income tax returns filed on behalf of the estate. In that document, respondent again conceded that there is no deficiency in income tax due from Ms. White for 2001, and that the additions to tax determined in the notice of deficiency are not due from Ms. White.

## The Positions of the Parties

The Estate's Position:  The estate's motion for costs and attorney's fees asserts that the estate is entitled to an award of reasonable litigation costs pursuant to section 7430(a)(2).  In support thereof, the executor of the estate argues that "the purpose of section 7340 [sic] is to compensate taxpayers who are put to unnecessary expense by having to resist unreasonable positions taken by the Government in administrative or judicial proceedings."  The executor argues that "the attorney's fees and costs claimed in this [sic] were caused by the Respondent's failure to follow normal administrative procedures.  In light of this conduct, Respondent should not be heard to say that his position was reasonable."  (Emphasis supplied.)

The executor argues that respondent was put on notice of Ms. White's death when the estate applied for an employer identification number, and when the estate filed income tax returns using that employer identification number.  The executor complains that when respondent received Forms 1099 in the name of Ms. White, respondent did not run "a matching program on 1099 [sic] data" and did not attempt to reconcile the discrepancies by sending explanation requests to the taxpayer.  The executor further complains that respondent did not issue a 30-day letter, or

follow "normal administrative procedures" that "would have resulted in an explanation that would have ended the case."

The executor asserts that "Respondent's performance did not improve after a petition was filed." According to the executor, respondent lost the administrative file and made "numerous requests for extension to file an answer." The executor also asserts that after all relevant tax returns were sent to respondent's counsel, the estate "was advised that the items could not be reconciled, that the case would need to be referred to Appeals, and that it would take a year to get the case resolved." The estate argues that "this caused Petitioner to waste a lot of time preparing a Motion for Summary Judgment." We note that no motion for summary judgment was filed on behalf of the estate.

The executor acknowledges that there are court opinions holding that, for purposes of deciding claims for litigation costs, the position of the United States is determined in the Government's answer. The executor argues that "the Commissioner should [not] be given a free pass because the position of the United States is that taken in an Answer." The executor also argues that those cases are distinguishable from this case because, in those cases, "the judicial proceedings were preceded by administrative

proceedings in which the taxpayers failed to come forward with the evidence needed to resolve the contested issues." The executor does not specify the cases to which he refers. According to the executor, in this case, the estate "was denied any administrative appeal and the opportunity to end the case with a letter because Respondent failed to work the case in a timely manner." The executor also argues that "the Government's litigating position includes pre-litigation proceedings" and cites Estate of Cervin v. Commissioner, 111 F.3d 1252 (5th Cir. 1997), revg. T.C. Memo. 1994-550.

Respondent's Position: Respondent concedes that the estate substantially prevailed with respect to the amount in controversy, and with respect to the most significant issue presented, as required by section 7430(c)(4)(A)(i) to qualify as a prevailing party. Respondent also concedes that the estate meets the net worth requirement of 28 U.S.C. section 2412(d)(2)(B), as required by section 7430(c)(4)(A)(ii).

Respondent argues that the estate is not the "prevailing party" and is not eligible for an award of litigation costs under section 7430(a) because the position of the United States in this proceeding was "substantially justified" within the meaning of the exception to the

definition of prevailing party, set forth in section 7430(c)(4)(B)(i). In support of that position, respondent asserts that the position of the United States was substantially justified both "at the time the notice of deficiency was issued" and "at the time he conceded the case."

Respondent also asserts that no answer was filed in this case, and, therefore, "respondent did not take a position in the court proceeding that was adverse to petitioner." According to respondent, this means that the estate cannot qualify as the prevailing party for the reasons explained in Fla. Country Clubs, Inc. v. Commissioner, 122 T.C. 73 (2004), affd. 404 F.3d 1291 (11th Cir. 2005), or it means that respondent's position was substantially justified.

Finally, respondent argues that the attorney's fees requested by the estate exceed the amount specified as reasonable by section 7430(c)(1)(B)(iii). The estate's motion for attorney's fees seeks an award of $3,875 in fees for 15.9 hours of attorney's time. That total is composed of 12.9 hours at $250 per hour ($3,225) and 3 hours at $216.67 per hour ($650). The motion does not explain why different rates are used in computing the fees. Respondent points out that an award of attorney's fees incurred during

2005 is limited under section 7430(c)(1)(B)(iii) to $150 per hour.  See Rev. Proc. 2004-71, 2004-2 C.B. 970, 976. Respondent notes that the estate has not shown that any of the special factors enumerated in section 7430(c)(1)(B)(iii) apply in this case.

## Discussion

Under the exception set forth in section 7430(c)(4)(B)(i), a party is not treated as the prevailing party if the United States establishes that its position in the proceeding was "substantially justified".  See sec. 7430(c)(4)(B)(i).  The Commissioner's position is substantially justified if it has a reasonable basis in both fact and law and is justified to a degree that could satisfy a reasonable person.  See Huffman v. Commissioner, 978 F.2d 1139, 1147 n.8 (9th Cir. 1992) (citing Pierce v. Underwood, 487 U.S. 552, 565 (1988) (defining "substantially justified" in the context of the Equal Access to Justice Act, 28 U.S.C. sec. 2412(d) (1994))), affg. in part, revg. in part and remanding T.C. Memo. 1991-144; Norgaard v. Commissioner, 939 F.2d 874, 881 (9th Cir. 1991), affg. in part and revg. in part T.C. Memo. 1989-390; Swanson v. Commissioner, 106 T.C. 76, 86 (1996); Rosario v. Commissioner, T.C. Memo. 2002-247; sec. 301.7430-5(c)(1), Proced. & Admin. Regs.  The determination

of the reasonableness of the Commissioner's position is based upon the available facts that formed the basis for the position, as well as any controlling legal precedent. See Maggie Mgmt. Co. v. Commissioner, 108 T.C. 430, 442 (1997); Coastal Petroleum Refiners, Inc. v. Commissioner, 94 T.C. 685, 688 (1990).

The phrase "position of the United States" is defined by section 7430(c)(7), as the position taken by the United States in a judicial proceeding, see sec. 7430(c)(7)(A), and the position taken in an administrative proceeding as of the earlier of (1) the date on which the taxpayer receives the notice of the decision of the Internal Revenue Service Office of Appeals, or (2) the date of the notice of deficiency, see sec. 7430(c)(7)(B).  Based upon the plain language of this definition, we held in Huffman v. Commissioner, T.C. Memo. 1991-144, that the position of the United States in the administrative proceedings was unjustified, whereas the position of the United States in the judicial proceeding was "not substantially unjustified".  In effect, we held that the United States can take two positions in a particular case, one position in the prelitigation administrative proceedings and another position in the judicial proceedings, and each position must be evaluated separately to determine whether it was

"substantially justified".  This is the so-called
bifurcated approach used in determining whether the
position of the United States is substantially justified
for purposes of section 7430(c)(4)(B).  See, e.g., Kenney
v. United States, 458 F.3d 1025, 1033 (9th Cir. 2006);
Huffman v. Commissioner, 978 F.2d at 1144-1148; Maggie
Mgmt. Co. v. Commissioner, supra; Swanson v. Commissioner,
supra.

The estate's motion seeks only litigation costs.
Therefore, we need examine only respondent's position in
this judicial proceeding.  See sec. 7430(c)(7)(A).  In most
cases, the position of the United States in a deficiency
proceeding in this Court is the position set forth in the
Commissioner's answer to the petition.  See, e.g., Huffman
v. Commissioner, supra; Sher v. Commissioner, 861 F.2d 131,
134-135 (5th Cir. 1988), affg. 89 T.C. 79 (1987); Maggie
Mgmt. Co. v. Commissioner, supra; Goertler v. Commissioner,
T.C. Memo. 2003-136; Rosario v. Commissioner, supra.

In this case, respondent never filed an answer.  The
position of the United States was established in
respondent's second motion to extend time within which to
answer.  In that motion, respondent made a full concession
of the tax deficiency and additions to tax determined in
the notice of deficiency.  As mentioned above, the second

motion was filed approximately 92 days after the petition.
We agree with respondent that this was reasonable. Cf.
Harrison v. Commissioner, 854 F.2d 263 (7th Cir. 1988),
affg. T.C. Memo. 1987-52 (concession some 6 months after
answer filed, after respondent had an opportunity to verify
information, held reasonable); Wickert v. Commissioner, 842
F.2d 1005 (8th Cir. 1988), affg. T.C. Memo. 1986-277
(concession 10 days after filing of answer, although it
took several months to draft the stipulation of settlement,
held reasonable); Ashburn v. United States, 740 F.2d 843
(11th Cir. 1984) (11-month delay in conceding case not
unreasonable); White v. United States, 740 F.2d 836, 842
(11th Cir. 1984) (Government's concession of issue 3 months
after issue raised held reasonable); Sokol v. Commissioner,
92 T.C. 760 (1989); Goertler v. Commissioner, supra
(Commissioner's concession approximately 90 days after
receiving documentation sufficient to substantiate the
deduction in question held reasonable); St. John v. United
States, 84 AFTR 2d 99-5867 (W.D. Mich. 1999) (an award of
attorney's fees not warranted where the Government conceded
the issues in Count I of a refund suit "within a relatively
short period after being served with the complaint, and
prior to answering it" and the taxpayer conceded the issues
in Count II, but months passed before the concessions were

memorialized in a stipulation); <u>W&S Distrib., Inc. v. United States</u>, 78 AFTR 2d 96-6013, 96-2 USTC par. 50,491 (E.D. Mich. 1996) (Government's concession of refund suit for employment taxes approximately 154 days after the complaint and before answering held reasonable, even though "the government's pre-litigation position was unreasonable"); <u>Donlon I Dev. Corp. v. United States</u>, 830 F. Supp. 1315, 1318 (C.D. Cal. 1993) ("If the Government concedes the petitioner's case in its answer, its conduct is reasonable." (Fn. ref. omitted.))

Furthermore, we are not persuaded, by the arguments advanced on behalf of the estate, that the position of the United States was not "substantially justified". Sec. 7430(c)(4)(B). The estate's first argument, as mentioned above, is that respondent "failed to follow normal administrative procedures". According to the estate, respondent was put on notice of Ms. White's death when the estate applied for and was assigned "an EI number", and when it used that number on income tax returns, signed by the executor. The estate complains that, when respondent received a Form 1099 in the name of Ms. White, respondent failed to follow normal administrative procedures which would have resolved any discrepancies and ended the case with a letter.

In effect, the estate is asking the Court to take into account respondent's actions during the prelitigation administrative proceedings in determining whether the position of the United States was substantially justified in this judicial proceeding.  This would be contrary to the bifurcated approach described above.  Under that approach, the analysis of the reasonableness of the Government's position is bifurcated into an analysis of the position of the United States in the administrative proceedings, and a separate analysis of its position in the judicial proceedings.  See Kenney v. United States, supra at 1033; Huffman v. Commissioner, 978 F.2d at 1144-1148; Maggie Mgmt. Co. v. Commissioner, 108 T.C. 430 (1997); Swanson v. Commissioner, 106 T.C. 76 (1996); see also Church of Scientology W. United States v. United States, 995 F.2d 230 (9th Cir. 1993) (unpublished opinion) ("Thus, while conduct prior to the initiation of litigation may color a court's determination as to whether the position of the United States was substantially justified, * * * the government's position in the judicial proceeding must be determined with reference only to actions taken after a complaint or petition has been filed.").

According to the estate, <u>Estate of Cervin v. Commissioner</u>, 111 F.3d 1252 (5th Cir. 1997), revg. T.C. Memo. 1994-550, on remand T.C. Memo. 1998-176, affd. 200 F.3d 351 (5th Cir. 2000), "holds that the Government's litigating position includes pre-litigation proceedings". Our reading of <u>Estate of Cervin v. Commissioner</u>, <u>supra</u>, does not reveal any such holding. In any event, even if <u>Estate of Cervin v. Commissioner</u>, <u>supra</u>, could be so read, we believe that under the decisions of the court to which an appeal of this case would be taken, the United States Court of Appeals for the Ninth Circuit, as under our own decisions, section 7430 requires a bifurcated approach in determining whether the position of the United States in a judicial proceeding is substantially justified for purposes of section 7430(c)(4)(B). See, e.g., <u>Kenney v. United States</u>, <u>supra</u>; <u>Huffman v. Commissioner</u>, <u>supra</u>; <u>Maggie Mgmt. Co. v. Commissioner</u>, <u>supra</u>; <u>Swanson v. Commissioner</u>, <u>supra</u>.

Furthermore, we cannot distinguish the cases utilizing the bifurcated approach on the ground that "In each of those cases the judicial proceedings were preceded by administrative proceedings in which the taxpayers failed to come forward with the evidence needed to resolve the contested issues." The bifurcated approach was formulated because of the language of the statute, particularly, the

definition of "position of the United States" set forth in section 7430(c)(7). Taken as a whole, section 7430 refers to administrative proceedings separately from judicial proceedings, and it provides for the possibility that the United States can take two positions, one in the administrative proceedings and another in the judicial proceedings, each of which must be separately evaluated. See Huffman v. Commissioner, supra. We do not dispense with the bifurcated approach required by section 7430 based upon the facts of the case. See Kenney v. United States, supra; Huffman v. Commissioner, supra.

The estate also argues that respondent's performance did not improve after a petition was filed. According to the estate, respondent lost the administrative file and made "numerous" requests for extension to file an answer. As we see it, respondent made one extension request and made a full concession, before filing an answer, in a second extension request filed 92 days after the petition. As stated above, we believe that respondent's position in these judicial proceedings was reasonable.

For the foregoing reasons,

Petitioner's motion for litigation costs will be denied.